# Commonwealth *versus* Railing.

The 87th section of the Criminal Code took the crime therein specified, procuring miscarriage, resulting in the death of the child or the woman, out of the class designated as murder, and made it a felony of lesser grade, and prescribed the punishment therefor; hence if one cause the death of a woman, in attempting to procure a miscarriage, he can not be indicted for murder.

May 6th, 1886. Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ. TRUNKEY, J. absent.

ERROR to the Court of Oyer and Terminer, of *Cumberland county:* Of July Term, 1885, No. 41.

Indictment of Charles C. Railing for the murder of Annie Foust. Motion to quash the indictment. After hearing, SADLER, P. J., filed the following opinion from which the facts of the case appear.

Charles A. Railing was indicted at the Court of Quarter Sessions of April T. 1884, under the 87th section of our Criminal

[Commonwealth *v.* Railing.]

Code, for an attempt to procure an abortion upon one Annie Foust, who was pregnant, and which resulted in her death.

Upon the trial of the case, which terminated in the conviction of the defendant, the dying declarations of the decedent were admitted in evidence on behalf of the Commonwealth. To this exceptions were taken, which were sustained by the Supreme Court, who remanded the record for further proceedings.

The District Attorney having come to the conclusion that a conviction could not be had on the first bill of indictment, without the dying declarations could be put in evidence, presented a new bill to the Grand Jury at November T. 1885. This bill was drawn in the Oyer and Terminer, and charged the defendant with murder. It was returned as a true one, and contained three counts. The first was for murder by an assault upon the decedent, without detailing how it had been committed. The second alleged that the assault had been made by the use of instruments and in the attempt to procure an abortion, and the third that a like attempt had been made by injecting poisonous drugs into the person of the decedent and thus causing her death.

When the case was called for trial the district attorney was granted leave, against the protest of the defendant, to enter a *nolle prosequi* on the bill upon which he had been formerly tried.

A motion was then made on behalf of the defendant to quash the new indictment, accompanied by reasons which in substance were, that the bill, while charging murder, set forth an offence which had been differently designated in our criminal code, and for which a milder punishment was inflicted, and that he could not be proceeded against under an indictment at the common law.

In order that the question involved, to wit: Whether an indictment at common law for murder could be sustained for the offence for which the prisoner was charged, might be speedily and economically disposed of, the district attorney further asked and obtained leave to enter a *nolle prosequi* as to the first count in the new indictment, and it was also stipulated, as appears by the notes of the court, "that the charge on which the second indictment was founded was the same for which defendant had been tried and convicted at April sessions, 1884, and that the evidence which the Commonwealth proposes to offer upon the trial of the case at present is virtually the same as was then submitted; and further, that in the consideration of the motion to quash, the court might consider the record and proceedings in the former case. Thus the court was enabled to dispose of the matter as if it were a de·

murrer by the defendant to the evidence offered on the part of the Commonwealth, as well as upon the motion to quash.

The Commonwealth held that the offence was one which would have justified an indictment and conviction for murder in the second degree at common law. The opinion of Judge KING, delivered in 1838, in case of Commonwealth v. Keeper of the Prison, and reported in 2 Ash., 227, was cited to show that this was recognized as the law in Pennsylvania. While the district attorney admitted that the 87th section of our criminal code provided for the punishment of the offence charged, that this legislation was but a recognition of an existing criminal offence, and was not the creation of a new one. That it but affixed a statutory penalty to a common law crime, and that the penalty was less, was no indication that it was intended to be a substitution for the other. The defendant, it was urged, might be indicted under the statute or at common law, as the Commonwealth might elect: Commonwealth v. Searle, 2 Binney, 332, was referred to as supporting the doctrine contended for. An examination of that case shows that the defendant had been indicted under a bill containing two counts—one for forging a note, and the second for having in his possession a forged note. He was acquitted on the first count, but convicted on the latter. A motion in arrest of judgment was made for the reason that the indictment did not conclude *contra formam* statute, it being alleged that the offence was statutory, and a conclusion as at common law was not sufficient.

The court, however, held that the conviction was proper, not because the Commonwealth could proceed either at common law or under the statute, but for the reason that the offence laid in the bill of indictment did not come within our Act of Assembly relating to forgery. "There was no presenting, forging or passing charged," as prohibited by our statute. He states the law to be that "when a statute creates or expressly prohibits an offence, and inflicts a punishment, the indictment must conclude against the form of the statute. But when a statute only inflicts a punishment, on that which is an offence before, there is no necessity of mentioning the statute.

White v. Commonwealth, 6 Binney, 179, was a case where the defendant was indicted for murder in the first degree, and the indictment concluded as at common law. The court then held that murder was a crime at common law. The Act of Assembly did not define the crime, but refers to it as a known offence. That it does not alter the punishment so far as concerns murder in the first degree, which always was death, and

[Commonwealth *v.* Railing.]

they conclude that it was not necessary that indictment should terminate "against the form of the Act of Assembly, &c."

In Russell *v.* Commonwealth, 7 S. & R., 489, the defendant was charged with burglary and larceny and convicted of the latter, and an attempt made for arrest of judgment for the reason that indictment was as at common law. The court say a conviction could be sustained for the latter offence under the common law forms of indictment, because it was an offence at common law, and that judgment might be given for the punishment imposed by the statute. And further that "both in England and Pennsylvania the judgments on murder has been altered by statute, yet judgment is always given according to the punishment prescribed by statute, although the indictments do not always conclude against the form of the statute.

The opinions in these three cases were all delivered by Justice TILGHMAN, and when taken as a whole not only do not to us appear to sustain the position assumed by the Commonwealth, but teach that punishment follows the Act of Assembly when the legislation is in reference to an existing crime at common law, as when it creates a new offence or prohibits as a crime what has not been previously designated as such.

Besides, in the determination of this question we must keep in view our criminal code. Under its sixth class of offences it places "those against the persons of individuals," and under the first subdivision of the class, "Homicide," etc. It defines murder of the first and second degree and fixes the punishment for the same. In that of the second degree an imprisonment for the first violation, of twelve years, may be imposed, and for a second one, for the natural life of the offender.

It places abortion under the third subdivision of this class and provides that "if death results from the unlawful administration of any poison or substance to, or the unlawful use of an instrument or other means, upon any woman pregnant with child, with intent to procure her miscarriage, the person so offending shall be guilty of a felony and undergo an imprisonment not exceeding seven years."

The 183d section of said code also provides "that in all cases where a remedy is provided or a duty enjoined by any Act or Acts of Assembly of this Commonwealth, the direction of such Act or Acts shall be strictly pursued, and no penalty shall be inflicted or anything done agreeably to the provisions of the common law in such cases further than shall be necessary for carrying such Act or Acts into effect."

The position that the statutes provide, to the exclusion of the common law, the only manner in which the defendant can be punished for the crime for which he is charged, defining the

[Commonwealth v. Railing.]

grade of the offence and providing the penalty is strongly sup-
ported by the case of the Commonwealth *v.* Evans, 13 S. &
R.. 426, in which it was held that the "Act of 28th March,
1814, establishing a fee bill and providing a forfeiture of fifty
dollars for the taking of illegal fees," forbade indictment at
common law for extortion. Judge DUNCAN, in delivering the
opinion of the court, came to the conclusion with great reluc-
tance, as the effect, he said, was to "blot out of our criminal
code an offence so aggravated, and against public justice, as
the crime of extortion," but he concludes that "it is a case
within the bounds of the law. It is a remedy provided by the
Act to enforce the penalty inflicted for the offence, and it
would be in direct opposition to that law which in clear and
unambiguous language, enacts that no other penalty shall be
inflicted nor anything done agreeably to the provisions of the
common law further than is necessary for carrying such Act
into effect. . . . . . If then it is to be a proceeding according
to the course of the Common law, it must be by indict-
ment; that would be a thing done agreeably to the com-
mon law not necessary to carry the Act into effect, and em-
phatically forbidden."

A similar case to the one at bar came before the Supreme
Court of Massachusetts, and reported as Commonwealth
*v.* Jackson, 15 Gray, 187. The defendant was indicted for
procuring a miscarriage and causing the death of a woman
under a statute which would appear to be similar to our own.
The court in delivering their opinion say "what would have
been embraced within the technical offence of murder at the
common law, has by force of the statute of 1845 become a stat-
ute offence, distinguished from murder and punishable by a
milder punishment."

The case of Robbins *v.* State, 8 Ohio St., 131, is also per-
tinent to the one under consideration. The determination is
to the effect that where a statute had been passed in 1834 pro-
viding for the offence of killing a woman by administering to
her medicine to procure an abortion, and in the year follow-
ing an Act was passed which enacted it to be manslaughter
to unintentionally kill without malice while the slayer was
engaged in an unlawful act." It was held that the first
act was still in force, the court holding that while "the
offence will answer the description of either statute, it is im-
possible to distinguish them by any of the ingredients essen-
tial to crime."

They further say that "the statute of 1834 makes the un-
lawful act the gist of the offence, and the consequential death
merely a descriptive circumstance," while the "Act of 1835

makes the killing the gist of the crime, and the unlawful means and object simply distinctive matters of description.

The same view was, in effect, taken by our own Supreme Court when this case was before it.    They stated that " the facts which constitute the crime are the administration of the drug or using the instrument with intent to produce a miscarriage.    It follows that death is no part of the facts which go to make up or constitute the crime. . . . . . The death considered in and of itself is not a constituent element of the offence. . . . . . It is not an essential ingredient of it. . . . . . When it occurs it is an accident, the sole effect of which is to determine whether the imprisonment of the defendant may be longer than when death does not occur."

If a conviction were had upon the present indictment what punishment would be inflicted—that appended to the commission of murder in the second degree, or that which the statute imposes for killing a woman in the attempt to procure an abortion ?

Besides, the manifest purpose of the second indictment is to charge the offence in such a manner that the Commonwealth may introduce evidence upon the trial of the defendant which our court of last resort has held to be incompetent.    I am well satisfied that the 87th section of our criminal code makes the only provision for the punishment of the offence for which the defendant stands charged. That he cannot be proceeded against at common law for murder.

The Act of Assembly, while it does not create a new offence, designates what was an offence at common law differently —declares it not to be murder, but to be a felony, punishable less severely than at common law.

It may be that the result of this determination will be to permit a guilty one to escape, but what is wanting in legislation, if our laws are imperfect, must be supplied by the body who enacts them.

The reasons why judgment should not be entered against the defendant are sustained and adjudged sufficient in law.

And now, April 6th, 1886, judgment is entered in favor of the defendant.

The Commonwealth thereupon took this writ assigning for error the judgment of the court.

*John T. Stuart*, District Attorney, (*H. S. Stuart* with him), for the plaintiff in error.

That this was murder in the second degree at common law in Pennsylvania before the Act of 1860, cannot be doubted. This is clearly set forth by Judge KING in Commonwealth *v.* Keeper of the Prison, 2 Ashmead, 227. This is true in general

at common law: Bishop Crim. Law, Vol. 2, page 691; Rex v. Fretwell, Leigh & C., 161; Finkler's Case, 1 East P. C., 264; 1 Hale Pleas of the Crown, 429–30.

Now this unquestionably was the law until the enactment of the 87th section of the Criminal Code.

This section provides that if any person shall unlawfully administer to any woman pregnant with child any drug or use any instrument with intent to procure her miscarriage, and the woman shall die in consequence, the person so offending shall be guilty of felony, and the penalty attached is a fine not exceeding $500, and imprisonment not exceeding seven years.

Now this is exactly the crime of murder in the second degree at common law. The statute creates no new crime, but treats the crime as it was at common law. It adds not a single incident; it subtracts none. To this common law crime it attaches a penalty.

Now, we hold that "where a statute only inflicts a punishment on that which was an offence before," there is no necessity of mentioning the statute: 2 B. 339, Com. v. Searle. In the same case Lord HALE's idea that "if an offence be at common law, and also prohibited by statute, the party may be indicted at common law," is quoted and approved.

When a statute creates an offence, or expressly prohibits that which was not an offence at common law, then the statutory remedy must be followed; but when it merely attaches a penalty to that which was an offence before, then the indictment may be at common law, and the statutory penalty may be inflicted: Com. v. Searle, supra; White v. Com., 6 Binney, 179; Russell v. Com., 7 S. & R., 489.

The Act of 1860 contains a re-enactment of the old law of March 21st, 1806, which declares that "In all cases where a remedy is provided, or a duty enjoined, or anything directed to be done by any Act or Acts of Assembly of this Commonwealth, the directions of the said Acts shall be strictly pursued, and no penalty shall be inflicted or anything done agreeably to the provisions of the common law for such cases, further than shall be necessary for carrying such Act or Acts into effect."

Now, the cases Com. v. Searle, supra, White v. Com., supra, and Russell v. Com., supra, were all decided subsequent to the Act of 1806, and this Act was called to the attention of and duly considered by the court. It only conflicts, therefore, with the infliction of the common law penalty, and still allows the conviction to be at common law. The punishment is statutory. The decisions on the Act of 1806 all indicate that where a new mode of procedure is directed by an Act of Assembly, there the common law remedy is gone; but where no

new tribunal is provided, no new mode of procedure, nothing is done by the statute but change the penalty, there the common law remedy is not taken away. In the case of the Com. *v.* Evans, 13 S. & R., 426, the mode of procedure was changed. The action was no longer criminal, but penal, and the Act of 1806 consequently compelled a resort to the statutory remedy.

But if the 87th section of the Code does create a new offence—if the "death of the woman is not a constituent element of the offence," as it was in the crime of murder at the common law, then there is a remnant of the crime at common law not covered and punished by the Act of Assembly, and this remnant is the death of the woman. By the same act the defendant commits two crimes, one of which, to wit: abortion, is punishable under the 87th section of the Code, and the other that of murder, which is left by the Code as it was at common law.

*F. E. Beltzhoover* (*S. Hepburn, Jr.*, with him), for defendant in error.—The 87th section of Criminal Code provides that if any person shall unlawfully administer to any woman pregnant with child any drug, or use any instrument with intent to procure her miscarriage and the woman shall die in consequence, the person so offending shall be guilty of felony, and the penalty attached is a fine not exceeding $500, and imprisonment not exceeding seven years.

Here is a clear and unmistakable description of the crime charged in both the indictments preferred against the defendant in this case and a plain and precise punishment affixed to it. What constitutes this crime?

The Supreme Court, when this case was before it, stated that "the facts which constitute the crime are the administration of the drug or using the instrument with intent to produce a miscarriage. It follows that death is no part of the facts which go to make up or constitute the crime. . . . . . The death considered in and of itself is not a constituent element of the offence. . . . . . It is not an essential-ingredient of it. . . . . . When it occurs it is an accident, the sole effect of which is to determine whether the imprisonment of the defendant may be longer than when death does not occur.

Now if there is in the statute and in the decision of the Supreme Court a clear and indubitable designation of the crime which is committed and the punishment which shall be inflicted in this State when the death of a woman occurs in an attempt to procure a miscarriage, then the law thus laid down must be followed rigidly and undeviatingly for two reasons:

1. Because you otherwise construe the statute so as to allow a duplication of a felony, and it is one of the most salutary

rules of the criminal law that statutes are always to be construed so as not to multiply high crimes.

2. Because the 183d section of our Criminal Code declares that "In all cases where a remedy is provided or a duty enjoined by any Act or Acts of Assembly of this Commonwealth, the direction of such Act or Acts shall be strictly pursued, and no penalty shall be inflicted or anything done agreeably to the provisions of the common law in such cases further than shall be necessary for carrying such Act or Acts into effect."

In the case of the Commonwealth v. Jackson, 15 Gray, 188, the Supreme Court of Massachusetts have settled this question exactly as contended for by the defendant in error.

The case of Robbins v. State, 8 Ohio State, 131, rules the point the same way.

Mr. Chief Justice MERCUR delivered the opinion of the court, May 17th, 1886.

In Railing v. Commonwealth, 16 W. N. C., 452, the unlawful acts charged were presented under an indictment of another form. We reversed that judgment for error in admitting certain declarations in evidence. The indictment then charged the defendant with having administered a drug to Annie Foust with intent to produce a miscarriage, and that her death resulted as a consequence of so administering it. That indictment was framed under the 87th section of the Criminal Code of 31st March, 1860. It declares if any person shall unlawfully administer to any woman, pregnant or quick with child, or supposed and believed to be so, any drug, poison or other substance whatsoever, or shall unlawfully use any instrument or other means whatsoever, with the intent to procure the miscarriage of such woman, and such woman or any child with which she may be quick, shall die in consequence of either of said unlawful acts, the person so offending shall be guilty of felony, and shall be sentenced to pay a fine not exceeding five hundred dollars, and to undergo an imprisonment by separate or solitary confinement at labor not exceeding seven years.

Section 183 of the same Code declares in all cases where a remedy is provided or duty enjoined or anything directed to be done by any Act or Acts of Assembly of this Commonwealth, the directions of said Acts shall be strictly pursued, and no penalty shall be inflicted or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such Act or Acts into effect.

Thus section 87 took the crime therein specified out of the class designated as murder, and made it a felony of lesser

grade, and prescribed the punishment therefor.   Hence no penalty therefor shall be inflicted or anything be done in punishment thereof otherwise than as directed by said section.

The present attempt is to convict the defendant of murder, on a new indictment, for committing the same acts on the same person, as charged in the former indictment.   The punishment prescribed for the lowest grade of murder, is imprisonment by separate or solitary confinement not exceeding twelve years, and for the second offence for the period of his natural life.   Thus the statute not only makes the acts with which the defendant is charged an offence less than murder, but also prohibits as severe a punishment therefor.   It may be urged that on an indictment for murder a conviction might be had of voluntary manslaughter.   This is undoubtedly true; but that does not help the case.   The punishment prescribed for such a conviction is a fine not exceeding $1,000, and imprisonment not exceeding twelve years.   Thus the attempt to indict for murder and punish as if murder, the commission of the acts specified which the statute does not make murder, cannot be successful.   It follows the learned judge committed no error in quashing the indictment.   The conclusion at which we have arrived appears to be in accord with Robbins *v.* State, 8 Ohio State, 131, and Commonwealth *v.* Jackson, 15 Gray (Mass), 188.

Judgment affirmed.