## Commonwealth *v.* Richardson, Appellant.

*Criminal law—Conspiracy—Common law conspiracy—Evidence—Self-criminating testimony.*

1. A conspiracy at common law is where two or more persons combine, confederate and agree together to do an unlawful act, or to do a lawful act by the use of unlawful means.

2. Even though no indictment can be brought under secs. 127 and 128 of the Act of March 31, 1860, P. L. 382, for conspiring to bribe and corrupt councilmen in the performance of their public duties, such an indictment may be maintained at common law.

3. The Act of April 29, 1874, P. L. 115, which was passed to carry into effect sec. 31, of art. III of the constitution, applies only to an attempt to bribe, and not to a conspiracy to bribe.

4. At common law no overt act is necessary to constitute the offense of conspiracy. In order to render the offense complete, there is no occasion that any act should be done, or that any one should be aggrieved or defrauded in pursuance or in consequence of the unlawful agreement.

5. The mere fact that testimony was given by a witness in a judicial proceeding against a person charged with the offense of bribery is not a conclusive bar against the use of that testimony against the witness in a subsequent judicial proceeding against him. It is only a bar where it was given under some sort of compulsion. The words "such testimony" in sec. 31, art. III, does not mean any testimony, but such as the person may have been "compelled to testify."

6. Where the record of the prior case fails to show that the accused in the later case testified in obedience to a subpoena, or under any compulsion, and also fails to show that he demurred to answering any

question upon the ground that the answer might incriminate him, or on any other ground, the prior testimony of the accused may be used against him.

Argued Oct. 25, 1909. Appeal, No. 46, April T., 1910, by defendant, from judgment of C. P. Allegheny Co., June T., 1907, No. 50, on verdict of guilty in case of Commonwealth v. Charles R. Richardson.    Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ.    Affirmed.

Indictment for conspiracy to bribe and corrupt a councilman.    Before Frazer, P. J.

At the trial a motion was made to quash the indictment for the following reasons:

1. The indictment in this case charges an offense not known to the law of this commonwealth.

2. The act of this commonwealth, which is a part of the penal code, and which was approved April 29, 1874, P. L. 115, provides specifically for the offense of attempted bribery of city councilmen by one or more persons, acting in concert as well as otherwise; defines this offense; names it corrupt solicitation; fixes the penalty, and further provides fully and entirely for every element of the offense and its conviction and punishment; and, therefore, all indictments for the said offense must be exclusively under said act, and for the said offense of corrupt solicitation, and not otherwise.

3. Because the defendants, or either of them, if guilty according to the facts set forth in the said indictment, are guilty only of corrupt solicitation; a remedy has been by the law of this commonwealth provided for that offense by the said act of April 29, 1874, and this remedy and the provisions of this act must be strictly and exclusively pursued.

4. Because our penal code provides fully and specifically for the definition, name, punishment and all other matters connected with or concerning the offense purported to be set forth in this indictment, the common law as to that offense is abrogated and nullified, and the provisions of the said penal code must be strictly and exclusively followed, and the in-

dictment must be under the provisions of said penal code and for the offense of corrupt solicitation. Therefore, an indictment for common-law conspiracy will not lie, because of sec. 183 of the penal code, which provides, "in all cases where a remedy is provided, or duty enjoined, or anything directed to be done, by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued and no penalty shall be inflicted or anything done agreeably to the provisions of the common law in such cases further than shall be necessary for carrying such act or acts into effect." Neither will an indictment lie for conspiracy under the sections of said penal code relating to conspiracy, because the said sections of said code relating to conspiracy do not embrace or comprehend such a case as this.

5. This indictment is drawn under our penal code, uses the phraseology thereof and of the said act of April 29, 1874, and concludes "contrary to the form of the act of the general assembly in such case made and provided and against the peace and dignity of the commonwealth of Pennsylvania."

And now, June 20, 1907, after argument by counsel, and upon consideration, the foregoing motion to quash is overruled, and at defendants' instance bill sealed. [1]

The court admitted under objection and exception a transcript of the testimony of the defendant, Richardson, given in the case of Commonwealth v. William A. Martin on the trial of an indictment for bribery. [2–4]

The court also permitted under objection and exception the cross-examination of defendant as to his testimony in the prior case. [1–14]

The court refused binding instructions for defendant. [15]

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were (1) refusal to quash the indictment; (2–14) rulings on evidence and (15) refusal of binding instructions for defendant.

*Clarence Burleigh,* for appellant.—The court below in its opinion remarks that Richardson testified in the Martin case

without objection.    Under the authorities, this, even if it was the fact, makes no difference: People v. Sharp, 107 N. Y. 427 (14 N. E. Repr. 319); People v. Spencer, 66 Hun (N. Y.), 149; Jacobs v. United States, 161 Fed. Repr. 694; U. S. v. Simon, 146 Fed. Repr. 89.

*Warren I. Seymour,* for appellee.—The word "such" refers to testimony given under compulsion: U. S. v. Kimball, 117 Fed. Repr. 156.

There is nothing in the record to show that appellant was summoned as a witness in the Martin case: Com. v. House, 6 Pa. Superior Ct. 92; Com. v. Craig, 19 Pa. Superior Ct. 81.

It is a crime in Pennsylvania to conspire to commit the statutory offense of bribery or corrupt solicitation: Wilson v. Com., 96 Pa. 56; Com. v. Brown, 23 Pa. Superior Ct. 470.

OPINION BY RICE, P. J., March 3, 1910:

After averring by way of inducement that there was pending and undetermined in the councils of the city of Pittsburg a certain ordinance for the proposed grant of certain franchises to the Pittsburg & Tube City Railroad Company, the count of the indictment under which the appellant was convicted charged, in substance, that the defendants unlawfully did falsely conspire and agree together, and with other persons whose names were to the grand inquest unknown, to tempt, solicit, bribe, corrupt and influence certain members of the city councils in the performance and discharge of the public and official duties in relation to the ordinance referred to, and to procure their votes and official influence in favor of the enactment of the same and the grant of the franchises to the railroad company, by the use directly and indirectly of large sums of money and other things of value and personal advantage to the said members of councils, to the prejudice of the city and divers citizens and residents thereof, contrary to the form, etc.

It is suggested in the course of the printed argument of appellant's counsel upon the 1st, 15th, 16th and 17th assignments of error, that neither the 127th nor the 128th section

of the penal code (Act of March 31, 1860, P. L. 382) comprehends such a conspiracy as was laid in the indictment. This is certainly true of the 127th section, and for present purposes it may be conceded to be true of the 128th section. This, however, is not a conclusive reason for holding the indictment to be bad. If there were no statute upon the subject of criminal conspiracy, an indictment for such conspiracy as is here alleged would lie at common law. No implication of an intention on the part of the legislature to abrogate or supersede the common law as to all criminal conspiracies arises from legislation defining particular conspiracies and prescribing the penalty therefor. The principles enunciated in Com. v. McHale, 97 Pa. 407, fully sustain the first of these propositions, and Wilson v. Com., 96 Pa. 56, is authority for both of them. Speaking of the 128th section of the penal code, the court said: "An examination of this section shows that it is confined to conspiracies to cheat and defraud, just as the previous section (127) relates to conspiracies to indict. A conspiracy at common law is a much broader offense, and embraces cases where two or more persons combine, confederate and agree together to do an unlawful act, or to do a lawful act by the use of unlawful means. Section 128 of the code does not, nor was it intended to interfere with the indictment and punishment of a common-law conspiracy." See also Com. v. Stambaugh, 22 Pa. Superior Ct. 386; Com. v. Brown, 23 Pa. Superior Ct. 470.

It is urged that sec. 1 of the Act of April 29, 1874, P. L. 115, which was passed to carry into effect sec. 31, art. III, of the constitution, provides specifically for attempted bribery, defines the offense, names it corrupt solicitation, declares it to be a misdemeanor, and fixes the penalty, and therefore sec. 183 of the penal code comes into operation and prevents any penalty being inflicted or anything being done agreeably to the common law in such case. It is to be observed, however, that the act of 1874 relates only to a "person or persons who shall directly or indirectly, by offer or promise of money, office, employment, testimonial or other thing of value, or who shall by threats or intimidations endeavor to influence,"

etc. There is a plain and substantial distinction between an attempt to bribe and a conspiracy to bribe; for at common law no overt act was necessary to constitute the offense of conspiracy, and neither the act of 1874 nor any other act has changed the rule in Pennsylvania, at least so far as the particular kind of conspiracy under consideration is concerned: Collins v. Com., 3 S. & R. 220; Com. v. McKisson, 8 S. & R. 420; Wilson v. Com., 96 Pa. 56; Brown v. Com., 23 Pa. Superior Ct. 470. "It has been repeatedly ruled that in order to render the offense complete there is no occasion that any act should be done, or that anyone should be aggrieved or defrauded in pursuance, or in consequence of the unlawful agreement:" GORDON, J., in Heine v. Com., 91 Pa. 145. The doctrine of the case of Com. v. Railing, 113 Pa. 37, does not rule the question before us. The point there decided was that the 87th section of the penal code took the crime therein specified, procuring miscarriage resulting in the death of the child or woman, out of the class designated as murder, made it a felony of lesser grade and prescribed the punishment therefor. But here, as has been seen, all the essential elements of a complete offense at common law may be proved without proof of the acts which constitute the statutory offense of corrupt solicitation. The thought is well expressed by the learned trial judge in the opinion overruling the motion for new trial as follows: "In this case, therefore, if Richardson combined with others to corruptly influence councilmen, and the verdict establishes that he did do so, he was guilty of conspiracy before he ever met Martin who was a member of council and to whom the commonwealth claims corrupt propositions were made. It was for that offense, namely, the combination and confederation, that defendant was tried and convicted." Where a count in an indictment does not charge a statutory offense, yet, but for the words contrary to the form of the act of the general assembly in such case made and provided, is a well-drawn count for a common-law offense, those words may be rejected as surplusage: Com. v. Kay, 14 Pa. Superior Ct. 376, and cases there cited. We conclude that the indictment and the evidence were sufficient to sustain a conviction of

common-law conspiracy; therefore the 1st, 15th, 16th and 17th assignments of error are overruled.

The matters complained of in the remaining assignments of error may be embraced under two general heads: first, the admission in evidence, in the presentation of the commonwealth's case in chief, of a duly proved transcript, in long-hand, of the official stenographic notes of the testimony given by the appellant, as a witness on behalf of the commonwealth, on the trial of an indictment against William A. Martin; second, permitting the district attorney upon the cross-examination of the appellant to read to him in the hearing of the jury certain portions of the transcript, and to interrogate him as to whether he had so testified on the trial of the Martin case. The objections made on the trial to these offers were that they were incompetent and irrelevant. The specific objection urged here is that the rulings contravened the provisions of sec. 32, art. III, of the constitution of this commonwealth, which so far as material here reads as follows: "Any person may be compelled to testify, in any lawful investigation or judicial proceeding against any person who may be charged with having committed the offense of bribery or corrupt solicitation, or practice of solicitation, and shall not be permitted to withhold his testimony upon the ground that it may criminate himself or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony." It is claimed by the commonwealth's counsel in opposition to this contention that no part of the former testimony was read to the jury except those parts which were embraced in the questions put to the appellant upon his cross-examination, and that these parts were not criminating. On the other hand, the recollection of counsel for appellant appears not to be in entire accord with this contention, for he asserts in his printed brief that the district attorney read the principal parts of the testimony in the presence and hearing of the jury, and commented on it in his argument to the jury. In the circumstances, we are compelled to consider the assignments of error in the light of the bill

of exceptions exclusively. This shows that, after the district attorney had proved by the official stenographer the correctness of the transcript of the appellant's testimony, he formally offered it "to be read to the jury," it being marked exhibit No. 2, and that the objection to the offer was overruled. The fair interpretation of the bill of exceptions is that the transcript was admitted in evidence. The record does not show that it was subsequently withdrawn or struck out. It was part of the commonwealth's evidence in chief which the appellant had to meet in the presentation of his testimony. For, even though it had not been actually read to the jury at the time the commonwealth rested, there was nothing to prevent it being referred to and commented on in the final argument. This condition of the record of the evidence had to be taken into consideration by the defendant in the presentation of his defense, and, for aught we know, may have influenced his course therein. We therefore conclude that the assignments cannot be overruled upon the ground that the testimony he gave in the Martin case was not used against him in the trial of his own case.

In general, proof of his voluntary admissions of relevant facts is competent against a person charged with a crime, and ordinarily such proof is not rendered incompetent by the mere fact that the voluntary admissions were made in the course of his testimony as a witness in another case: Williams v. Com., 29 Pa. 102; Com. v. Doughty, 139 Pa. 383; Com. v. House, 6 Pa. Superior Ct. 92; Com. v. Ensign, 40 Pa. Superior Ct. 157; 12 Cyc. of Law and Procedure, 474, 480. This still remains the general rule notwithstanding the section of the constitution under consideration. The question is whether this case is taken out of the general rule by that section. The first essential to an affirmative answer to that question is that the charge against the accused in the case in which the former testimony was given was bribery, corrupt solicitation or practice of solicitation, and it was suggested in the oral argument that this does not appear in the record. The record furnishes very slight evidence of that essential, it is true, although we do find in the caption to the stenographer's

transcript as printed in the appellant's paper-book the following: "Testimony of Charles R. Richardson, defendant in this case, given in the case of Commonwealth v. William A. Martin (bribery) at No. 586, Dec. Sessions 1906," etc. It could be argued with much force that the best evidence of the nature of the charge in the Martin case would be the indictment itself. But in view of the foregoing reference to the charge in the caption of the transcript we are not disposed to put our decision upon the ground that it does not appear with technical certainty that the testimony was given in one of the classes of cases specified in sec. 32, art. III; particularly, as the words "offense of bribery" employed in that section have been construed to mean all bribery, whether bribery at common law or under the constitution itself, or any kind of statutory bribery (Com. v. Bell, 145 Pa. 374), and as it is virtually conceded by counsel for the commonwealth in his history of the case that the indictment against Martin was for accepting a bribe as councilman.

The next question to be considered is, Whether the mere fact that testimony was given by a witness in a judicial proceeding against a person charged with the offense of bribery is a conclusive bar against the use of that testimony against the witness in a subsequent judicial proceeding against him? After deliberate consideration of the wording of the constitutional provision, in the light of the mischief to be remedied and the object to be accomplished by it, we are of opinion that it is not. To be more explicit, to prevent the use of the testimony afterwards in a judicial proceeding against the witness, it must have been given under some sort of compulsion. The words are not "any testimony" that a witness may give in such a proceeding shall not be used against him, but "such testimony." It is argued with much force that the purpose of the constitutional provision was not to compel testimony of a noncriminating character or tendency—for that could always be done—but to compel testimony that might conceivably criminate or tend to criminate, and that the words "such testimony" properly may and should be construed to relate to that kind of testimony; further, that to

prevent the use of the testimony afterwards against the witness his claim of the privilege to withhold it must have been made and overruled by the judge. Be that as it may, we think there can be no escape from the conclusion that the words "such testimony" relate to testimony that has been compelled.

The remaining inquiry is, whether the testimony given by the witness in the Martin case was of that character. As in the consideration of the question as to the use that was made of the testimony we have felt constrained to confine our attention strictly to what the record shows, so we feel constrained to do in the consideration of the present question. The argument of appellant's counsel is based, to some extent, on the assumption that the appellant appeared and testified in the Martin case in obedience to a subpœna. It is argued that this brings the case within the principle of People v. Sharp, 107 N. Y. 427. The commonwealth's counsel does not concede this fact, and insists that it does not appear anywhere in the record. It is true the opinion of the learned judge overruling the motion in arrest of judgment assumes it to be a fact, but it is important to notice that he did not try the Martin case in which the evidence was given. A careful examination of the record, including the official report of the evidence given on the trial of the appellant as well as the transcript of the testimony given by him in the Martin case, fails to show that he appeared and testified in that case in obedience to a subpœna, or under the compulsion of threats or any compulsion whatever. Again, the transcript of the evidence he gave fails to show that he demurred to answering any question that was put to him upon the ground that the answer might criminate him or upon any ground whatever. It gives no indication, and there is no extraneous evidence tending to show that he did not testify freely and voluntarily, or that he became a witness under compulsion of law or of legal process. The extraneous evidence as to his willingness to testify in the various proceedings against Martin growing out of this same transaction tends to rebut any inference that he was compelled to testify in the bribery case. But apart from this

consideration, we conclude from the testimony relating exclusively to the circumstances under which he testified in the trial of the indictment against Martin above referred to, that the case is not excepted from the general rule above stated by sec. 32, art. III, of the constitution.

The judgment is affirmed and the record is remitted to the court of quarter sessions of Allegheny county with direction that the judgment be fully carried into effect, and to that end it is ordered that the defendant forthwith appear in that court and that he be by that court committed to serve and comply with such part of his sentence as had not been performed at the time this appeal was made a supersedeas.